Dwayne E. ANDERSON, Plaintiff,

v.

Don SUNDQUIST, et al., Defendants.

No. 98–2222–D/V.

United States District Court,
W.D. Tennessee,
Western Division.

April 13, 1998.

Dwayne E. Anderson, Henning, TN, pro se.

## ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ORDER ASSESSING FILING FEE ORDER OF DISMISSAL AND ORDER IMPOSING SANCTIONS UNDER 28 U.S.C. § 1915(g)

DONALD, District Judge.

### I. *INTRODUCTION AND PROCEDURAL HISTORY*

Plaintiff, Dwayne E. Anderson, an inmate at the West Tennessee High Security Facility (WTHSF),[1] has filed a fourth complaint[2] under 42 U.S.C. § 1983, with an application to proceed *in forma pauperis.* For the reasons set forth below, plaintiff is ordered to submit the $150.00 filing fee within thirty (30) days of the entry of this order. This obligation will continue despite the immediate dismissal of this action under 28 U.S.C. § 1915(g). The Clerk of Court shall file the case and record the Defendants as Bernard Bennett, Donal Campbell, James Clark, Robert Conley, Billy Dowell, Jimmy Grennard, Hines, John Kelly, Maulin, Montgomery, Robert Mumford, Ottinger, Don Sundquist, and Steve Vaughn.

■ The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104–134, 110 Stat. 1321 (1996), enacted 28 U.S.C.

---

1. The word prison is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

2. Anderson has previously had the following cases or appeals dismissed as frivolous:

　1. *Anderson v. Davis,* No. 96–2558–D/A (W.D.Tenn. Sept. 17, 1996) (dismissing § 1983 complaint under 28 U.S.C. § 1915(e)(2)(B)), *app. dismissed,* No. 96–6518 (6th Cir. Dec. 6, 1996).

　2. *Anderson v. Prince,* No. 96–6469 (6th Cir. Dec. 3, 1996) (dismissing appeal of W.D.Tenn. case number 95–2195–D/Brc for lack of jurisdiction). In this case the plaintiff's first name was originally misspelled Dewaync, but documents in that file, including the appellate docket sheet, use the proper spelling, and other documents reflect Anderson's Tennessee Department of Corrections (TDOC) inmate number.

Additionally, Anderson has filed another case that was dismissed.

　3. *Anderson v. Campbell,* No. 97–2843–M1 (W.D.Tenn. Mar. 19, 1998) (dismissing for failure to comply with filing fee payment requirements of the PLRA).

§ 1915(g),[3] which severely restricts plaintiff's filing privileges. Section 1915(g) operates to bar prisoners from filing further *in forma pauperis* actions after three dismissals. *Green v. Nottingham*, 90 F.3d 415, 420 (10th Cir.1996). The cases dismissed by this Court count as "strikes" under § 1915(g). *Adepegba v. Hammons*, 103 F.3d 383, 387 (5th Cir. 1996). The appellate dismissals for lack of jurisdiction also count, as a case or appeal that is devoid of jurisdiction is plainly frivolous. Moreover, in counting frivolous dismissals for purposes of § 1915(g), qualifying appellate dismissals also count as strikes. *Id.* at 388. *See also Newlin v. Helman*, 123 F.3d 429, 433 (7th Cir. July 23, 1997) (a dismissal in the district court followed by a dismissal of an appeal counts as two strikes); *Moore v. Pemberton*, 110 F.3d 22, 24 (7th Cir.1997) (dismissal of an appeal counts as a strike).

The federal courts in general, and this Court in particular, can take judicial notice of those dismissals. *Green*, 90 F.3d at 418. Plaintiff does not allege that he is now under imminent danger of serious physical injury. He is clearly a prisoner within the meaning of revised § 1915(h).[4] Accordingly, Dwayne Anderson may no longer file any action in this district in which he proceeds *in forma pauperis* unless he demonstrates that he "is under imminent danger of serious physical injury." The motion to proceed *in forma pauperis* is DENIED and the complaint is DISMISSED under 28 U.S.C. § 1915(g) and 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff is, however, liable to the Court for the full $150.00 filing fee.[5]

Furthermore, this dismissal will be with prejudice because plaintiff's claims are legal-ly frivolous and would be dismissed even if plaintiff prepaid the full filing fee. *See* 28 U.S.C. § 1915(e)(2): "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... is frivolous."

## II. *PLAINTIFF'S CLAIMS*

In this case, plaintiff sues Tennessee Governor Don Sundquist, Tennessee Department of Corrections (TDOC) Commissioner Donal Campbell, WTHSF Warden Robert Conley, Unit Manager James Clark, Disciplinary Board Chairman Billy Dowell, Inmate Relations Coordinator John Kelly, Disciplinary Board Members Bernard Bennett, Ottinger, and Steve Vaughn, Corporal Jimmy Grennard, and Officers Hines, Maulin, Montgomery, and Robert Mumford. His claims all arise out of plaintiff's transfer from unit 6 to unit 5 at WTHSF. Plaintiff's linens and clothes were lost during the transfer, and he protested to Kelly and Conley about the loss. Subsequent communications turned mildly acrimonious. Plaintiff attempted to intimidate Kelly into obtaining various items of clothing and property by threatening to report him to the warden, and Kelly charged him with the disciplinary infraction of threatening an employee. The WTHSF disciplinary board convicted Anderson of two violations and imposed various penalties, including a written warning, package receipt restrictions, four dollar fines, and television restrictions. Plaintiff also sues Officers Hines, Maulin, Montgomery and Mumford for searching his cell and allegedly confiscating or destroying legal pa-

---

3. The statute provides:

 In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

 28 U.S.C. § 1915(g).

4. The statute provides:

As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

28 U.S.C. § 1915(h).

5. This obligation to pay the entire filing fee accrued at the moment plaintiff filed the complaint with the Court, which, in this case, was the moment he deposited his complaint in the prison mail system. Plaintiff cannot avoid this obligation because the case is dismissed as frivolous.

pers. Plaintiff, of course, views all of the defendants' conduct as retaliatory for his filing lawsuits and for complaining about Kelly's treatment of him.

■ An inmate does not have a liberty interest in a particular security classification or assignment to a particular institution. *Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547–48, 49 L.Ed.2d 466 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976); *Newell v. Brown,* 981 F.2d 880, 883 (6th Cir.1992); *Beard v. Livesay,* 798 F.2d 874, 876 (6th Cir.1986). Prison classification and disciplinary cases were previously analyzed by considering whether "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State [or federal government] has created a protected liberty interest." *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). In *Sandin v. Conner,* 515 U.S. 472, 484–87, 115 S.Ct. 2293, 2300–02, 132 L.Ed.2d 418 (1995), however, the Supreme Court, without explicitly overruling *Hewitt* itself, returned to the question left open in *Wolff v. McDonnell,* 418 U.S. 539, 564–71, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974): whether inmates even have a liberty interest in freedom from segregation, punitive or administrative. The Court rejected *Hewitt*'s methodology and concluded that they do not.

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek[ v. Jones,* 445 U.S. 480,] 493, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 [ (1980) ] (transfer to mental hospital), and *Washington[ v. Harper,* 494 U.S. 210,] 221–222, 110 S.Ct. 1028, 1036–37, 108 L.Ed.2d 178 [ (1990) ] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

> Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation. Neither *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), nor *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), requires such a rule.... We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.... We hold, therefore, that neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff.* The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.

*Sandin,* 515 U.S. at 483–84, 486, 487 (footnotes and some citations omitted).

■ *Sandin* thus focuses not on the content of regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481. Absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.* at 484–86. Thus language in state laws or prison regulations no longer creates a liberty interest protected by the Due Process Clause. *Rimmer–Bey v. Brown,* 62 F.3d 789, 790–91 (6th Cir.1995). Rather, from now on, when analyzing due process claims federal courts look neither to state laws or regulations to ascertain whether they create a liberty interest in

connection with reclassification or a prison transfer, nor to the subjective motives of prison officials for effecting such a change. Instead, the Court focuses on the nature of the deprivation itself.

> After [*Sandin*], prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion. Instead, a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 474, 115 S.Ct. at 2295 (emphasis added).

*Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir. 1995), *cert. denied,* 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996). According to *Orellana,* only deprivations that clearly impinge on the *duration* of confinement, will henceforth even possibly qualify for constitutional "liberty" status. *Id.* at 31–32.

◼ The allegation that plaintiff was confined to segregation or deprived of minor privileges such as packages or television viewing does not amount to an allegation of "atypical and significant hardships" "in relation to the ordinary incidents of prison life" and thus does not allege the deprivation of any liberty interest. *See, e.g., Mackey v. Dyke,* 111 F.3d 460, 462–63 (6th Cir.1997). As plaintiff has not alleged any atypical and significant hardship, he has failed to allege the deprivation of a federally recognized liberty interest, and he is not entitled to any of the procedural protections enunciated in *Wolff* or its progeny. Plaintiff has no due process claim.

◼ To the extent that Anderson claims the search of his cell violated his rights, he is mistaken. A convicted inmate does not enjoy a right to privacy in his cell, and prison authorities do not violate any protected constitutional right by conducting searches and inspections. *Hudson v. Palmer,* 468 U.S. 517, 525–26, 104 S.Ct. 3194, 3199–3200, 82 L.Ed.2d 393 (1984); *Bell v. Wolfish,* 441 U.S. 520, 555–56, 99 S.Ct. 1861, 1882–83, 60 L.Ed.2d 447 (1979).

◼ To the extent that plaintiff alleges that he was the victim of retaliation, he has no claim. In general, prison officials may not take *adverse* administrative action against an inmate in retaliation for his protected action under the First Amendment. *Newsom v. Norris,* 888 F.2d 371, 376–77 (1989).

In general, First Amendment retaliation claims are analyzed as prescribed by *Mt. Healthy City Schl. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The Sixth Circuit has succinctly summarized the Court's teaching:

> (1) The threshold question is whether the plaintiff's conduct deserves constitutional protection.
>
> (2) If the court finds that an employee's conduct was protected by the first amendment, the finder of fact must determine whether the action taken was because he engaged in the protected conduct. The employee's protected conduct must be a "substantial factor" or a "motivating factor" in the employer's decision.
>
> (3) Once the employee meets his burden, the burden shifts to the employer to prove that the action the employee is complaining about would have taken place absent the protected conduct.

*Ratliff v. Wellington Exempted Vil. Schl. Bd. of Educ.,* 820 F.2d 792, 795 (6th Cir.1987).

◼ In the context of prison cases, claims of retaliatory administrative action must be analyzed under Fourteenth Amendment principles of substantive due process. *Cale v. Johnson,* 861 F.2d 943, 949 (6th Cir.1988). An inmate raising a substantive due process claim "faces a virtually insurmountable uphill struggle." *Rimmer–Bey,* 62 F.3d at 791 n. 4. Such claims must include a "chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). Furthermore, an inmate claiming retaliation for an exercise of First Amendment rights must show more than subsequent administrative action that he considers unsatisfactory. Rather, the prison official's conduct must transcend all bounds of reasonable conduct and be "so reprehensible as to 'shock the conscience of the court.'" *Rimmer–Bey,* 62 F.3d at 791 n. 4 (citing *Rochin v. People of California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952);

*Williams v. Smith,* 717 F.Supp. 523, 525 (W.D.Mich.1989)). *See also Mayberry v. Spicer,* 808 F.Supp. 563, 567 (E.D.Mich.1992) (following *Williams* ). The prison official's alleged conduct must constitute "an egregious abuse of governmental power." *Cale,* 861 F.2d at 950.

Additionally, the Sixth Circuit has reiterated that a retaliation claim necessitates some impairment of First Amendment rights. "Although it is clearly established that prisoners have a fundamental right of access to the courts and the right to petition for a redress of grievances, Ward does not allege that these rights have been impaired." *Ward v. Dyke,* 58 F.3d 271, 275 (6th Cir. 1995) (citations omitted). In *Ward,* the Court held that prison officials did not violate an inmate's clearly established right of access to the courts through retaliation when they transferred him to a different and less desirable institution of the same security classification.

■ Addressing the first *Ratliff* issue, the plaintiff's conduct in this case does not deserve constitutional protection. It is true that a prison inmate has the right, protected by the First Amendment, "to petition the Government for a redress of grievances." The scope of this right in relation to a prisoner is limited to the prisoner's own personal right to file non-frivolous claims with the courts. *Lewis v. Casey,* 518 U.S. 343, 350–54, 116 S.Ct. 2174, 2180–81, 135 L.Ed.2d 606 (1996). A prisoner's First Amendment rights are more than adequately protected by the ability of prisoners to file civil actions in the courts. There is no First Amendment right to complain to prison officials, whether informally or by a structured internal prison grievance procedure. *See, e.g., Corn v. Lewis,* 1993 WL 210702, 1993 U.S.App. LEXIS 15350 (6th Cir. June 15, 1993);[6] *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991); *Flowers v. Tate,* 925 F.2d 1463 (6th Cir.1991); *Spencer v. Moore,* 638 F.Supp. 315, 316 (E.D.Mo.1986); *Azeez v. DeRobertis,* 568 F.Supp. 8, 10 (N.D.Ill.1982). It follows that retaliation for voicing complaints, whether verbally and informally or by use of a prison grievance procedure, does not implicate First Amendment rights.

■ Furthermore, even if a First Amendment right is implicated by this complaint because the plaintiff had filed an action in federal court, he has no claim. Under *Lewis v. Casey,* 116 S.Ct. at 2182, it is clear that no First Amendment claim exists under *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and its progeny without an actual injury. According to *Lewis,* an inmate must have sought "to file *nonfrivolous* legal claims challenging their convictions or conditions of confinement." *Id.* at 2180–81 (emphasis added).[7] No actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented."[8] *Id.* at 2182. Anderson, however, does not allege any valid claim.

Furthermore, this Court's records of plaintiff's other lawsuits indicates that the dis-

**6.** Although citation to unpublished Sixth Circuit precedents is disfavored, this case is referred to in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.' " *Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989).

**7.** The requirement that an indigent prisoner has no constitutional or other right of access to the courts to prosecute a frivolous action has found expression in previous lower court rulings. *See, e.g., In re Billy Roy Tyler,* 839 F.2d 1290, 1292 (8th Cir.1988); *Phillips v. Carey,* 638 F.2d 207, 209 (10th Cir.1981).

**8.** This decision adopts the view widely adopted by the lower courts that a viable *Bounds* claim depends on an inmate pleading and proving he was actually impeded in his ability to conduct a particular case. *Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985). *See also Strickler v. Waters,* 989 F.2d 1375, 1383 n. 10 (4th Cir.1993) (citing numerous cases requiring some actual prejudice as an essential component of a *Bounds* claim); *Jones v. Franzen,* 697 F.2d 801, 803 (7th Cir. 1983). Lower courts had previously held that the inmate must have suffered some actual interference with a case, such as missing a court deadline, the dismissal of an action that would have otherwise proceeded, or the imposition of sanctions. *Weaver v. Toombs,* 756 F.Supp. 335, 340 (W.D.Mich.1989). *See also Martin v. Davies,* 917 F.2d 336, 340 (7th Cir.1990) (claim of interference with court-access must be supported by factual allegations of missed court-dates, loss of a won case, or an inability to file on time).

missal of his most recent suit was not related to his lack of access to legal materials seized during a search of his cell, but to his failure to abide by PLRA requirements to have filing fees paid to the Court. Anderson does not allege that the defendants interfered with his payment of filing fees. He thus has not alleged that the dismissal of case number 97–2843–MI was related in any way to the defendant's conduct.

Moreover, this Court has held that an inmate does not enjoy a First Amendment right to attempt to intimidate prison employees by threats of lawsuits or disciplinary action. *See, e.g., Harrison v. Seay*, 856 F.Supp. 1275, 1279 (W.D.Tenn.1994) (holding prison officials are not limited to imposing disciplinary sanctions only for threats to inflict physical harm); *Campbell v. Dolejs*, No. 94–2180–G/V (W.D.Tenn. Aug. 27, 1996) (same, following *Harrison* ). Accordingly, to the extent that Anderson contends that the disciplinary convictions were retaliation for his statements to Kelly, he has no claim.

Finally, plaintiff has alleged no chronology of events from which retaliation could be plausibly inferred. He alleges only that the disciplinary convictions occurred after his comments to Kelly and his filing of previous lawsuits. This does not carry his burden to allege retaliation. Moreover, the transfer of plaintiff does not "egregiously abuse governmental authority" or "transcend all bounds of reasonable conduct and shock the conscience" of the Court. *Rimmer–Bey*, 62 F.3d at 791 n. 4; *Williams v. Kling*, 849 F.Supp. 1192, 1196 (E.D.Mich.1994); *Williams v. Smith*, 717 F.Supp. at 525; *Mayberry*, 808 F.Supp. at 567.

Moreover, an inmate cannot immunize himself from adverse administrative action by prison officials merely by complaining to prison officials or filing a lawsuit and then claiming that everything that happens to him is retaliatory. *Smith v. Halford*, 570 F.Supp. 1187, 1194–95 (D.Kan.1983). *Cf. Ward*, 58 F.3d at 274–75 (retaliation claim not made

out simply by alleging inmate transferred after filing numerous grievances, even though prison authorities openly admitted transfer based on numerous grievance filings—plaintiff did not suffer a cognizable injury). If that were so, then every prisoner could obtain review of non-cognizable claims merely by filing a lawsuit or grievance and then perpetually claiming retaliation. A plaintiff cannot bootstrap a frivolous complaint with a conclusory allegation of retaliation.

Finally, a review of the documents attached as exhibits to the complaint demonstrates no retaliation, but rather that plaintiff simply has had a series of petty disagreements with TDOC officials and has voiced numerous complaints about his treatment, all of which have been found to be without merit. There is certainly no constitutional right to freedom from disagreements with prison officials, and no right to abuse the grievance process in a state prison.

This complaint lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 1732–33, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989).

As the complaint is frivolous, it is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

### III. *APPEAL ISSUES*

 The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis*. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith. Under 28 U.S.C. § 1915(b), a prisoner plaintiff must pay the entire $105 filing fee required by 28 U.S.C. §§ 1913 and 1917.[9] *In forma pauperis* sta-

---

9. The fee for docketing an appeal is $100. *See* Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee: Upon the filing of any separate or joint notice of appeal or application for appeal or upon the

receipt of any order allowing, or notice of the allowance of, an appeal, or of a writ of certiorari, $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

tus merely grants him the right to pay the fee in installments.

In *McGore v. Wrigglesworth,* 114 F.3d 601, 610–11 (6th Cir.1997), the United States Court of Appeals for the Sixth Circuit construed § 1915(b) as requiring a prisoner to pay the entire appellate filing fee in installments even if the trial court certifies that the appeal is not taken in good faith. *McGore,* however, did not address appeals by prisoners who are barred from proceeding *in forma pauperis* by 28 U.S.C. § 1915(g).[10] That section nullifies the installment-payment privileges created by § 1915(b).

As required by *McGore,* the Court considers whether this appeal may be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis.* *See Williams v. Kullman,* 722 F.2d 1048, 1050 n. 1 (2d Cir.1983). The same considerations that lead the Court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith, and plaintiff may not proceed on appeal *in forma pauperis.*

This is the fourth dismissal of one of plaintiff's cases or appeals as frivolous. Twenty-eight U.S.C. § 1915(g) bars him from taking an appeal under § 1915(b) if he has three prior dismissals. *Green,* 90 F.3d at 417. Accordingly, if plaintiff files a notice of appeal, the Clerk is ORDERED to assess and collect the entire fee of $105 from his prison trust fund account whenever funds are in the account, without regard to the installment payment provisions of § 1915(b). Furthermore, if plaintiff files a notice of appeal, he must pay the entire fee within thirty days of filing that notice. If he does not, this Court will notify the United States Court of Appeals for the Sixth Circuit that he has failed

to comply with the fee requirements, and that court will dismiss his appeal. It will not be reinstated thereafter even if he does pay the filing fee. *Cf. McGore,* 114 F.3d at 609–10.

## IV. IMPOSITION OF SANCTIONS UNDER 28 U.S.C. § 1915(g)

 Finally, this is at least the fourth dismissal of one of plaintiff's cases or appeals as frivolous. Prior to the enactment of 28 U.S.C. § 1915(g), this Court had adopted the restrictions articulated in *Winslow v. Romer,* 759 F.Supp. 670, 683–85 (D.Colo.1991) as the model for the Court's invocation of its inherent authority to impose sanctions. It is indisputable that the district courts possess such authority. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–50, 111 S.Ct. 2123, 2132–35, 115 L.Ed.2d 27 (1991) (pre-PLRA case holding no constitutional right of access to the courts to prosecute an action that is frivolous or malicious); *Mercer v. Fayette Circuit Court,* 1995 WL 222181, 52 F.3d 325 (6th Cir. April 13, 1995) (pre-PLRA case noting that appellant filed nine frivolous lawsuits arising out of state court prosecution); *In re Martin–Trigona,* 737 F.2d 1254, 1261 (2d Cir.1984) (pre-PLRA case holding courts possess inherent authority to sanction litigants for abusive repetitive filings). *See also Gibson v. Gibbons,* No. 97–2559–M1/A (W.D.Tenn. Aug. 14, 1997) (invoking both § 1915(g) and court's inherent power to restrict prisoner's filing privileges). Nothing in amended 28 U.S.C. § 1915(g) restricts this authority. Further, the Court concludes that 28 U.S.C. § 1915(g) lowers the threshold for the Court's use of this inherent power. Accordingly, the Court will require that plaintiff comply with both 28 U.S.C. § 1915(g) and the further restrictions and conditions enunciated below.

It is hereby ORDERED that Dwayne Anderson, TDOC Inmate Number 124529, shall not be permitted to file any further actions without first obtaining leave of court. To obtain leave of court, plaintiff must file an affidavit similar to that required by the district court in *Winslow v. Romer,* 759 F.Supp.

10. *See supra* note 2.

670, 683–85 (D.Colo.1991). Additionally, he must file any further complaints on a form available from the Clerk of Court. The Clerk shall not send plaintiff more than one (1) complaint form and one (1) *in forma pauperis* application form per year, and shall not respond to such requests within six months of the most recent request. Any request for such a form must be made in writing by the plaintiff himself, in a letter that shall not exceed one sheet of paper.

To request leave of court, plaintiff shall file, along with any future complaint:

1) a motion requesting permission of the Court to file;

2) an affidavit certifying under penalty of perjury that:

 a) he has read and understood Rule 11 of the Federal Rules of Civil Procedure;

 b) the complaint contains claims he knows to be reasonably based in law and fact;

 c) he is aware that filing any further frivolous actions will result in the imposition of sanctions by the Court;

 d) either:

 1) none of the defendants to the new action were defendants in any previous action that was dismissed as frivolous; *OR*

 2) that some of the defendants to the new action were defendants in a previous action that was dismissed as frivolous, but that the plaintiff has compared the claims in the frivolous case with the claims in the new case, and that he does not seek to sue those defendants on any claims that could have been litigated in that case; and

 e) plaintiff is under an "imminent danger of serious physical injury" as shown by specific facts alleged in the affidavit.

 f) The affidavit shall further certify that he has been sanctioned by this Court in this case, and state the style; jurisdiction, and docket number of this action.

Any complaint submitted by plaintiff without this motion and affidavit will not be filed but will be immediately returned to the plaintiff for failure to comply with this order. The Court may then impose further sanctions against plaintiff, including a further monetary fine, which may be collected directly from his prison trust fund account.

The Clerk of Court is ORDERED not to file, open on this Court's docket, assign a new docket number, or assign to a judge, any further case submitted by this plaintiff unless specifically directed to do so by a district judge or magistrate judge of this district.

Moreover, any case submitted by this plaintiff to another district court that is thereafter transferred to this district will result in the same sanctions.

Plaintiff is ORDERED not to file any further documents in this or any other actions except a notice of appeal filed on the form available for that purpose from the Clerk's office. The Clerk shall not accept any other documents for filing in this action, or any of plaintiff's other actions. Any other documents submitted by plaintiff shall be returned to him by the Clerk.

Finally, a copy of this order shall be sent to TDOC Commissioner Donal Campbell.