## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| EL-SHABAZZ AHKEEN, | ) |
| | ) |
| | ) |
| Plaintiff/Appellant, | ) Lauderdale Circuit No. 5072 |
| | ) |
| VS. | ) Appeal No. W1998-00640-COA-R3-CV |
| | ) |
| TONY PARKER, et al, | ) |
| | ) |
| | ) |
| Defendants/Appellees. | ) |

**FILED**

January 10, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF LAUDERDALE COUNTY
AT RIPLEY, TENNESSEE
THE HONORABLE JOSEPH H. WALKER, JUDGE

**EL-SHABAZZ AHKEEN, pro se**
Henning, Tennessee

**PAUL G. SUMMERS**
**Attorney General and Reporter**
**MICHAEL E. MOORE**
**Solicitor General**
**STEPHANIE REEVERS**
**Senior Counsel**
**Civil Rights and Claims Division**
Nashville, Tennessee
Attorney for Appellees

**AFFIRMED IN PART, REVERSED
IN PART AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

Ahkeen appeals the trial court's dismissal of his 42 U.S.C. § 1983 civil rights action. For the following reasons, the trial court is reversed in part and affirmed in part.

**Facts and Procedural History**

Ahkeen is an inmate in the custody of the Tennessee Department of Correction ("TDOC") serving a life sentence at the West Tennessee High Security Facility ("WTHSF"). On January 8, 1998, Ahkeen filed a prison grievance against an officer at WTHSF, Turner. Ahkeen alleged that Turner used unprofessional conduct such as cursing, threatening, and directing racial epithets against Ahkeen.

The following week, a WTHSF supervisor, Chapius, approached Ahkeen at his job site to speak with him about the grievance. Chapius assured Ahkeen that Turner had been told to refrain from such actions in the future. As a result, Ahkeen agreed to sign an "Informal Resolution Contact Sheet" that effectively eliminated the grievance action. After Ahkeen signed the resolution sheet, Chapius told him that "it" better not happen again.[1]

On January 20, 1998, Reynolds, another WTHSF officer, attempted to confiscate a gold cross earring worn by Ahkeen.[2] Reynolds told Ahkeen that Chapius had instructed him to confiscate the earring. When Ahkeen pointed out that other inmates were wearing earrings, Reynolds stated that he was ordered only to take Ahkeen's earring, not the other inmates' earrings. While seeking out Chapius to discuss the confiscation, Turner approached Ahkeen and told him that the confiscation was "just something to think about when you [*Ahkeen*] want to file another grievance."

Chapius ordered Ahkeen to give up the earring pursuant to TDOC policy 504.01, which allowed only female prisoners to wear earrings. Chapius did not require any other inmates wearing

---

[1]Ahkeen was uncertain whether the "it" Chapius used referred to Turner's conduct or Ahkeen's filing of a grievance.

[2]Ahkeen's left ear was pierced prior to his incarceration. He has continually worn an earring in that ear throughout his prison term. Ahkeen alleges that he began wearing the earring in question in 1992 while incarcerated at Tennessee State Prison in Nashville. At that time, male prisoners were allowed to wear one earring.

earrings to give them up at that time.

After his earring was confiscated, Ahkeen inserted a small pin into his ear in order to keep the earring hole open. He was then approached by Reynolds, who ordered him to remove the pin and not to use any other object to keep the earring hole from closing. Reynolds told Ahkeen that he was to allow the hole to mend pursuant to Chapius' orders.

Following the earring incident, Ahkeen filed a prison grievance alleging that Chapius and Reynolds had acted in a retaliatory, arbitrary, and unconstitutional manner. Ahkeen based this grievance on Chapius' and Reynolds' actions in confiscating his earring and preventing Ahkeen from maintaining the earring hole with the pin. In the grievance, Ahkeen requested that he be allowed to wear the earring as a religious expression. He also claimed that the actions of the officers violated his Due Process, Equal Protection, freedom of religion, freedom of expression, and property rights.

On February 10, 1998, the WTHSF's grievance committee recommended that "until such a time that all inmates are required to turn in earrings and said policy is institutionally implemented, inmate [*Ahkeen*] should get his earring back and not be required to let the hole close up." Pursuant to the committee's recommendation, the earring was returned to Ahkeen the following day. According to Ahkeen, Chapius warned him that the earring would be re-confiscated.

Shortly after Ahkeen's earring was returned, WTHSF's associate warden, Parker, issued an institutional memo. The memo stated that TDOC policy 504.01 prohibited inmates from having earrings at WTHSF.[3] The memo also ordered all inmates to mail their earrings out. The memo became effective on February 17, 1998, and warned that inmates who had not complied by March 15, 1998, would be subject to disciplinary action. The memo was posted on the inmate living units as per prison procedure. In addition, Ahkeen received a copy of the memo personally delivered by Chapius, at which time Chapius ordered Ahkeen to make arrangements to send out his earring before

---

[3]TDOC 504.01 addressed the personal property that inmates are allowed while incarcerated. Section VI(D) of this policy refers to a list of permissible property published by the TDOC Commissioner each year. The list in effect at the time the cause of action arose provided that only *female* inmates were allowed earrings. WTHSF is an all male prison.

the day was over.[4]

On March 9, 1998, Ahkeen filed suit in the Circuit Court of Lauderdale County. In his complaint, Ahkeen alleged that his civil rights had been violated by Parker, Chapius, Reynolds, and Turner. Ahkeen alleged that TDOC policy 504.01 had been selectively enforced against him as retaliation for the grievance filed against Turner. In addition, Ahkeen asserted that the policy discriminated on the basis of gender and interfered with his personal liberties. Ahkeen also asserted that TDOC policy 504.01 contradicted policy 502.03 which allowed inmates freedom in their grooming and dress, absent conflict with specific prison needs.[5] Ahkeen based his claims on the First, Fourth, and Fourteenth Amendments to the United States Constitution. He sought injunctive and declaratory relief as well as monetary damages.

On March 24, 1998, Ahkeen filed a supplemental complaint which added an additional claim based on Turner's actions following Ahkeen's original complaint. Ahkeen claimed that he was verbally assaulted by Turner, threatened with solitary confinement, and subjected to racial and religious slurs. Turner also apparently threatened to file false grievances against Ahkeen. According to Ahkeen, Chapius and another inmate witnessed part of the altercation, but Chapius did nothing to stop Turner. Based on these facts, Ahkeen added a claim for violation of his rights as guaranteed by the First Amendment of the Tennessee Constitution, in addition to the previously alleged violations of the United States Constitution. Ahkeen added the state law claims of civil rights intimidation via malicious harassment and official oppression pursuant to Tenn. Code Ann. § 39-17-309; § 4-21-701; and § 39-16-403.

Parker, Chapius, and Turner ("Defendants") filed a motion for summary judgment, requesting judgment as a matter of law because the compliant failed to state a claim upon which relief could

---

[4]Ahkeen claims that no other prisoner was singled out to receive a copy of the memo or required to send their earrings out before the deadline.

[5]TDOC policy 502.03 states in relevant part: "Inmates shall be permitted freedom in personal grooming and dress as long as their appearance does not conflict with the institution's requirements for safety, security, identification, and hygiene."

be granted.[6]  In addition, the Defendants moved to dismiss Ahkeen's supplemental complaint for failure to state a claim.[7]  The Defendants filed supporting affidavits contravening some of Ahkeen's allegations.  Specifically, Chapius stated that he had previously required other inmates to remove their earrings, and that he had personally sought out Ahkeen solely to prevent Ahkeen from getting into trouble over the violation. Chapius and Parker both refuted Ahkeen's allegations that their actions were retaliatory. Defendants then filed a statement of undisputed facts that corroborated the basic facts as provided in the complaints but did not contain any references to the alleged verbal assaults suffered by Ahkeen.

In support of the summary judgment motion, Defendants asserted that Ahkeen did not comply with Tenn. Code Ann. § 41-21-805, which required indigent inmates to file an affidavit of inability to pay which included a history of the inmate's prior lawsuits. Defendants also asserted that Ahkeen had failed to provide probative evidence to support a retaliation claim. In addition, Defendants challenged Ahkeen's First Amendment claim regarding freedom of religion and expression.[8]  Defendants argued that Fourth Amendment property, privacy, and Due Process claims asserted by Ahkeen were unfounded because of the prison setting.  Defendants also argued that Ahkeen's Equal Protection claims of selective enforcement and gender discrimination were unfounded. Finally, Defendants alleged that Turner was not personally involved in the alleged 42 U.S.C § 1983 violations and was therefore not liable; that verbal harassment was not a cognizable claim under § 1983; and that Defendants could not be sued under § 1983 because they were acting in their official capacities.

Ahkeen challenged the Defendants' Motion for Summary Judgment, alleging that genuine issues of material facts were still in dispute, namely the alleged retaliatory motive of the Defendants, as well as the alleged selective enforcement of TDOC policy 504.01.  In the alternative, Ahkeen

---

[6]Reynolds was also a named defendant in Ahkeen's complaint.  Reynolds later adopted the Motion for Summary Judgment filed by the other Defendants.

[7]Defendant's included this "motion to dismiss" within the language of their motion for summary judgment.

[8]Defendants argued that the prison's interest in the safety of the inmates outweighed any first amendment right held by Ahkeen.  According to Defendants, allowing inmates to "cross-dress" [*wear an earring*] would encourage sexual assaults in prison.

asked that summary judgment be granted in his favor if no such dispute existed.

On October 5, 1998, the trial court entered an order granting Defendants' request for summary judgment and dismissing the complaint for failure to comply with Tenn. Code. Ann. § 41-21-801. The court found that Ahkeen did not state a retaliation claim, a first amendment claim, a property, privacy, or due process claim, or an equal protection claim. In addition, the court found that the Defendants were sued in their official capacity, and therefore did not qualify as "persons" under § 1983. Pursuant to Tenn. Code. Ann. § 9-8-307(h), the court stated that state officers and employees are absolutely immune from liability for acts or omissions within the scope of their office or employment, except for certain types of actions that were not alleged by Ahkeen.

Ahkeen did not learn of the October 5, 1998 order until December 2, 1998. Due to the late notice, Ahkeen's subsequent Motion for Delayed Appeal was granted by the court. Ahkeen presents five issues on appeal: whether the trial court erred in dismissing his complaint for failure to comply with Tenn. Code Ann. § 41-21-805; whether the trial court erred in dismissing the complaint for failure to state a claim; whether the trial court erred in denying Ahkeen's complaint on summary judgment; whether the court erred in dismissing the complaint based on the finding that Defendants were sued in their official capacities; and, whether the court erred in dismissing the complaint on the finding that Defendants were immune because of state law.

**Analysis**

We find it appropriate to note that some of the parties' arguments are overlapping, therefore, we have combined these issues as needed for clarity.

As a preliminary matter, we must determine the proper scope of review for this case. The order granting Defendants' Motion for Summary Judgment also includes and grants a Motion to Dismiss. This Motion to Dismiss was included within the language of Defendants' summary judgment motion and a supporting memo.

**I. Motion to Dismiss**

A motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action as a matter of law. TENN. R. APP. P. 13(d); Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn.1997); Pursell v. First American Nat'l Bank, 937 S.W.2d 838, 840 (Tenn. 1996); Cook v. Spinnaker's of Rivergate, Inc., 878 S.W.2d 934, 938 (Tenn.1994). From our reading of the record, the Motion to Dismiss applies only to Defendants' argument that Ahkeen's complaints should be dismissed for failure to comply with Tenn. Code Ann. § 41-21-805.

## Tenn. Code Ann. § 41-21-805

The first issue raised by Ahkeen is whether the trial court erred in dismissing his complaint for failure to comply with Tenn. Code Ann. § 41-21-805. This statute provides that in order for an indigent inmate to proceed with a claim in state court, the inmate must file a list of every lawsuit or claim he previously filed.[9] While we agree with Defendants' argument in the trial court that such a filing is mandatory, we find no authority requiring the filing to be made simultaneously with the filing of the initial complaint. Ahkeen made the mandatory filing before the order granting the Defendants a summary judgment was entered. Defendants do not reargue this issue on appeal. Therefore, for the reason stated above, we find that the trial court erred in dismissing Ahkeen's complaint for failure to comply with Tenn. Code Ann. § 41-21-805.

## II. Whether Summary Judgment was proper

---

[9]Tenn Code Ann. § 41-21-805 provides:
(a) Any inmate who files a claim with an affidavit of inability to pay costs shall file a separate affidavit with the following information:
(1) A complete list of every lawsuit or claim previously filed by the inmate, without regard to whether the inmate was incarcerated at the time any claim or action was filed; and
(2) For each claim or action listed in subsection (a):
(A) The operative facts for which relief was sought;
(B) The case name, case number and court in which the suit or claim was filed;
(C) The legal theory on which the relief sought was based;
(D) The identification of each party named in the action; and
(E) The final result of the action, including dismissal as frivolous or malicious under this part or otherwise.
(b) If the affidavit filed under this section states that a previous suit was dismissed as frivolous or malicious, the affidavit must state the date of the final order affirming the dismissal.
(c) The affidavit must be accompanied by a current certified copy of the inmate's trust account statement.

7

All other issues could be properly disposed of only through the Motion for Summary Judgment. The trial court considered material outside of the pleadings, including supporting affidavits and finding of facts in reaching its decision on the other issues. See Knierman v. Leatherwood, 542 S.W.2d 806, 808 (Tenn. 1976). Summary judgment is the appropriate procedural device to use when the trial court goes outside the pleadings to reach its decision. Therefore, we now consider whether summary judgment was properly granted on the other issues in the court below.

The standards governing our review of a summary judgment motion are well settled. Our inquiry involves purely a question of law; therefore, we review the record without a presumption of correctness to determine whether the absence of genuine and material factual issues entitle the movant to judgment as a matter of law. Robinson v. Omer, 952 S.W.2d 423, 426 (Tenn.1997); Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn.1993); TENN. R. CIV. P. 56.03. Our primary inquiry is whether there are any genuine issues of material fact. It is only after a finding that no material facts are in dispute that the movant must either affirmatively negate an essential element of the non-movant's claim or conclusively establish an affirmative defense. Robinson, 952 S.W.2d at 426; Byrd, 847 S.W.2d at 215, n. 5. Id. If the movant successfully negates a claimed basis for the suit, the non-movant may no longer simply rely upon the pleadings, but must then establish the existence of the essential elements of the claim or the non-existence of the defense. Finister v. Humboldt General Hosp., Inc., 970 S.W.2d 435, 437-438 (Tenn. 1998).

Under the standard stated above, we find that the preliminary finding necessary to grant a motion for summary judgment was not met on all claims. As explained below, a genuine issue of material fact regarding the actions of Defendant Turner remain in dispute. Accordingly, the trial court should not have granted the Defendants' motion as to all issues.

**A. Retaliation Claim against Defendant Reynolds**

Ahkeen argues on appeal that the trial court erred in finding that he did not make a viable retaliation claim against Reynolds. Reynolds is the guard who attempted to confiscate Ahkeen's earring and then ordered him to remove the pin he had inserted to keep the hole open. Ahkeen argues that Reynolds' personal lack of a retaliatory motive is irrelevant, and that Reynolds is not

shielded simply because he was acting on a superior's orders.

In establishing a retaliation claim under § 1983, a prisoner plaintiff's burden is different from that of a non-prisoner plaintiff. A prisoner plaintiff must show: (1) that he engaged in conduct protected by the First Amendment; (2) a chronology of events from which retaliation may reasonably be inferred; (3) that a sufficiently adverse prison action was taken against him and that such an action would deter a person of "reasonable firmness" from continuing the protected conduct; and (4) a causal connection between the conduct and the adverse action. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999); Anderson v. Sundquist, 1 F.Supp. 2d 828, 832-833 (W.D. Tenn. 1998).

Even assuming that Ahkeen's wearing of an earring *may* qualify as protected freedom of expression First Amendment conduct, Ahkeen failed to meet the remaining requirements. There is no clear chronology of events that creates a reasonable inference of retaliation. As stated above, Reynolds was unaware of the grievance filed by Ahkeen. His actions, in merely carrying out the order of a superior, do not imply a retaliatory motive and therefore do not create the required chronology of events.

In addition, we do not find that the confiscation of Ahkeen's earring qualifies as a sufficiently serious adverse prison action. Ahkeen was allowed to contest the confiscation and gain the return of the earring until the policy was uniformly applied. Under these circumstances, we cannot find that the confiscation of an earring would deter a person of ordinary firmness from continuing protected conduct.

Finally, we do not find the required causal connection between the conduct and the adverse action. Ahkeen was only warned of the consequences of filing other grievances after his earring had been returned, and this warning did not come from Reynolds. At no time did Defendant Reynolds indicate that his actions were due to Ahkeen's filing of a grievance.

We find that the trial court did not err in granting Defendants' motion for summary judgment regarding Ahkeen's retaliation claim against Reynolds. Ahkeen has failed to raise any genuine issues

9

of material fact that would prevent the grant of a summary judgment. Defendants have fully met their burden in proving that Ahkeen's allegations do not meet the elements of a viable retaliation claim. Accordingly, the trial court's order is affirmed on this point.

## B. Retaliation Claim against Defendant Turner

Ahkeen also asserted a retaliation claim against Defendant Turner. Ahkeen based this claim on Turner's use of racial and religious slurs as well as the verbal threats that Ahkeen would receive harsh treatment unless he stopped filing grievances. Ahkeen alleges that Turner threatened him with solitary confinement in addition to threatening to file false reports against him. This claim presents a much closer question under the standard provided above. Although indicators of each required factor are present, unanswered questions remain. In particular, the existence and content of the exchanges between Turner and Ahkeen is in dispute. For this reason, we find that genuine issues of material fact regarding Turner's motive remain, and summary judgment was not proper on this claim. Therefore, the trial court is reversed on this issue.

## C. Freedom of Religion

Ahkeen basis his freedom of religion claim on the First Amendment of the United States Constitution.[10] While prison regulations are subject to the First Amendment, courts will not interfere with the administration of a prison or its policies unless they are unreasonable or arbitrary. O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); Dean v. Campbell, No. 02A019704CV00077, 1997 WL 401960 (Tenn. Ct. App. July 17, 1997). In addition, an inmate is not exempted from a religion-neutral policy merely because his practice of religion is burdened by application of the policy. Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed. 2d 876 (1990). In a case such as this, where the inmate's claim is based on confiscation of an item, the inmate must prove that the article is essential or a central tenant to his religion in order to prevail. See Dean.

Ahkeen's allegations do not constitute viable claims for a violation of his rights to freedom

---

[10]Ahkeen also attempts to assert a freedom of expression claim. This claim is intermingled with his freedom of religion claim and characterized as a freedom of religion and expression issue. For this reason, we address this issue only as a sub-category of the freedom of religion claim.

of religion under the First Amendment. The policy in question is clearly religion-neutral; it prohibits all types of earrings, not just those with religious connotations. This policy is neither unreasonable nor arbitrary in light of the atmosphere inside the prison, where clothing and jewelry can take on other meanings such as sexual orientation or gang affiliation. In addition, Ahkeen has failed to show that the cross earring is essential to his practice of religion.

For the reasons stated above, the confiscation of the earring does not support a freedom of religion claim under the First Amendment. The trial court did not err in granting Defendants' summary judgment motion on this issue.

## D. Fourteenth Amendment Due Process Claim

The Fourteenth Amendment guarantees that a person's property will not be taken without due process of law. However, a § 1983 claim is not the proper vehicle to recover for deprivation of the property when state law provides a remedy for recovery. Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In this case, such a remedy is available under Tennessee state law, pursuant to Tenn. Code. Ann. § 9-8-307(a)(1)(F).[11] The existence of an adequate remedy under state law renders any § 1983 claim untenable. Therefore, the trial court did not err in granting summary judgment of this claim.

## E. Right to Privacy Claim

Ahkeen asserts that the confiscation of his earring violated his Fourth Amendment right to privacy. Ahkeen characterized this confiscation as an unreasonable invasion of his privacy. We are unconvinced that this action triggers the protection afforded by the Fourth Amendment. However, even assuming that Ahkeen's right to privacy is jeopardized, we are unconvinced that he has stated a viable claim for the following reasons.

---

[11]Tenn. Code. Ann. § 9-8-307(a)(1)(F) provides: (a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of "state employees," as such term is defined in § 8-42-101(3), falling within one (1) or more of the following categories:
(F) Negligent care, custody or control of personal property. . .

While prisoners are afforded the right to privacy under the Fourth Amendment, this right is limited. Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2804, 41 L.Ed.2d 495 (1974.) As the Supreme Court stated in Hudson v. Palmer, "loss of freedom of choice and privacy are inherent incidents of confinement." Hudson, 468 U.S. 517 at 528, 104 S.Ct. 3194 at 3201, 82 L.Ed.2d 393. Certainly, any right to privacy is subject to the overriding need of the prison to maintain security and order through reasonable prison regulations. We find no support for Ahkeen's allegations that the confiscation violated his right to privacy. Therefore, the trial court did not err in granting summary judgment on this claim.

## F. Equal Protection Claim

Ahkeen asserts a Fourteenth Amendment Equal Protection claim based on the incidents described above. According to Ahkeen, he was subjected to unjustified discrimination and unequal treatment and was denied his right to equal protection under the law. Specifically, Ahkeen claims that the prison regulation was selectively enforced against him and that the policy prohibiting male prisoners from wearing earrings was a form of gender discrimination. See TDOC policy 504.01. Defendants assert that the regulation was neither selectively enforced nor a form of gender discrimination.

An Equal Protection claim will lie if a plaintiff can show that he has been burdened by state action because he is a member of a suspect or quasi-suspect class or that his fundamental rights have been burdened because he is a member of a government classification. Doe v. Sundquist, 943 F. Supp. 886 (M.D. Tenn. 1996), aff'd., 106 F.3d 702 (6th Cir. 1996), cert. denied, 522 U.S. 810, 118 S. Ct. 54, 139 L.Ed. 2d 16 (1997). Defendants argue that Ahkeen has failed to claim discrimination based on any classification and that he does not assert a violation of any fundamental right. While we agree that Ahkeen's argument regarding selective enforcement does not meet the threshold requirement to present an equal protection claim, we are not persuaded that his claim of gender discrimination warrants no discussion. Gender is a quasi-suspect class for equal protection purposes. See Doe. With that in mind, we will now address whether Ahkeen's discrimination claim was properly subject to summary judgment.

We find it appropriate to note that although this court has not directly addressed this issue before, other courts have previously held that different grooming regulations for male and female inmates do not trigger the inmate's Equal Protection rights. Hill v. Estelle, 537 F.2d 214, 215 (5th Cir. 1976); Poe v. Werner, 386 F.Supp. 1014, 1016 (M.D. Pa. 1974). Indeed, the physical differences between male and female inmates may require different regulation in order to promote safety and hygiene. With this is mind, we consider Ahkeen's status as a prisoner in relation to his claim.

In order to be upheld, a prison regulation that infringes upon the Constitutional rights of inmates must be reasonably related to a legitimate government interest. Turner v. Safely, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). On appeal, Ahkeen claims that the Defendants have failed to demonstrate that the regulation is reasonably related to any legitimate government interest. We are unpersuaded by this argument for the following reasons.

In the court below, Defendants asserted that TDOC policy 504.01 was enacted to "promote institutional security by discouraging transsexual dressing by inmates." Defendants further argued that by discouraging transsexual dressing and therefore discouraging sexual assaults, the policy helps maintain safety and internal security at the prison. Ahkeen argues that there is no evidence of sexual assaults occurring because inmates were wearing earrings and that consequently, the interest put forth by the Defendants does not qualify under the test stated above. We disagree.

The Court recognizes that in general, a male wearing an earring does not immediately suggest that the wearer is transsexual or invite sexual assault. However, the atmosphere among the inmates in a prison undoubtedly contains greater tension, both sexual and otherwise, than the atmosphere outside the prison walls. Therefore, we find that a policy restricting transsexual dressing, even in what seems a minor way, is reasonably related to the legitimate government interest in the welfare and safety of the inmates. Accordingly, the trial court did not err in granting summary judgment on Ahkeen's equal protection claims.

### G. Verbal Harassment

We find it unnecessary to fully address Ahkeen's verbal harassment claim. Ahkeen bases

his claims solely on the racial and religious slurs he was purportedly subjected to by Turner. These allegations do not give rise to a claim under 42 U.S.C. § 1983. Verbal threats, no matter how offensive, do not amount to an actionable violation of Ahkeen's rights. See Emmons v. McLaughlin, 874 F.2d 351, 352 (6th Cir. 1989). We are unpersuaded that the threats were motivated by the desire to punish Ahkeen for the exercise of a constitutional right. See Thaddeus-X v. Blatter, 175 F.3d 378, at 386 (6th Cir. 1999) (verbal harassment may be actionable if it motivated in substantial part by a desire to punish an individual for exercise of a Constitutional right). Instead, it appears that the on-going antagonistic relationship between Turner and Ahkeen was the motivating factor in any verbal exchange. Summary judgement was proper on this issue.

### H. Discovery Issues

In addition to the validity of the claims themselves, Ahkeen basis his appeal on the idea that summary judgement was not proper because discovery was on-going and motions were pending at the time that the trial court granted Defendants' motion. We find this argument to be without merit.

The trial court may assign reasonable limitations on discovery when an inmate files a civil suit. Bradfield v. Dotson, No. 02A01-9707-CV-00152, 1998 WL 63521 at *3 (Tenn. Ct. App. February 17, 1998); Reid v. State of Tennessee, No. 02A01-9801-BC-00293 1999 WL 257628 (Tenn. Ct. App. April 28, 1999). In addition, the trial court can limit discovery that is unreasonably burdensome, duplicative, or cumulative in relation to the positions of the parties or the issues asserted. See TENN. R. CIV. P. 26.02(1). From our review, we find that both parties were allowed adequate discovery prior to the grant of summary judgment. Accordingly, the trial court did not err on this issue.

### III. Defendants' Official Capacities

On appeal, Ahkeen asserts that the trial court erred in dismissing his complaint on the grounds that Defendants were sued for money damages in their official capacities as state employees. Ahkeen alleges that he is suing the Defendants in their individual capacities, and that his request for

relief is not limited to money damages.

A suit for money damages pursuant to 42 U.S.C. § 1983, cannot be maintained against states, state agencies, or employees of the state in their official capacity. Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Dean v. Campbell, No. 02A019704CV00077, 1997 WL 401960 (Tenn. Ct. App. July 17, 1997). In other words, state employees sued in their official capacities for monetary damages do not qualify as "persons" under 42 U.S.C. § 1983. See 42 U.S.C. § 1983. Conversely, a state employee can be sued in his official capacity for declaratory or injunctive relief. Will, at 70 n. 10. In addition to the limitations mentioned above, Tennessee state law further shelters state employees from liability. See Tenn. Code Ann. § 9-8-307(h)[12].

We find no support for Ahkeen's argument that he is suing the Defendants in their individual rather than official capacity. For this reason, his claim for money damages must fail. However, it is clear from the record that Ahkeen is seeking declaratory and injunctive relief in addition to any money damages. Ahkeen's claims for relief other than money damages falls within the ambit of § 9-8-307(h) of the Tennessee Code and are also prohibited, except as to Defendant Turner. As we previously stated, there remain genuine issues of material fact which may indicate that Turner's actions are not protected under § 9-8-307(h). Accordingly, the trial court did not err in disposing of these claims as to the Defendants other than Turner.

**Conclusion**

Based upon the foregoing, the judgment of the trial court is hereby affirmed in part, reversed in part, and remanded to the trial court for such further proceedings as are necessary. Costs of the appeal are assessed one-half to the appellant, El-Shabazz Ahkeen, and one-half to the appellee, Tony Parker, et al., for which execution may issue if necessary.

---

[12]Tenn. Code. Ann. § 9-8-307(h) provides in relevant part: State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain.

_____HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.