Michael Charles WARD,
Plaintiff–Appellee,

v.

Dennis DYKE; Fred Christians; Robert
J. Mayer; Sherry Burt, Defendants–
Appellants,

Dan Bolden; Donald Houseworth;
Robert Brown, Jr.; David Haskell,
Warden, Defendants.

No. 94–1444.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 30, 1994.

Decided June 29, 1995.

Michael Charles Ward, Lapeer, MI, pro se.

Linda M. Olivieri, Office of the Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellants.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; CHURCHILL, District Judge.*

SUHRHEINRICH, Circuit Judge.

Defendants Dennis Dyke, Fred Christians, Robert Mayer and Sherry Burt appeal the denial of qualified immunity in this § 1983 action brought by plaintiff Michael Ward, a state prisoner. Plaintiff Michael Ward's ("Ward") suit stems from his transfer from Ionia Temporary Facility ("ITF") to the Chippewa Temporary Facility ("URF"). Ward alleges that he was transferred because he exercised his First Amendment right to seek redress of grievances. The district court denied defendants' motion for summary judgment based on qualified immunity. Because we find that Ward has failed to identify a violation of his constitutional rights, we **REVERSE** the decision below.

## I.

Ward began serving a life sentence on April 13, 1990. His first placement was at ITF, a level II facility located in the lower peninsula of Michigan. Ward began filing his grievances on May 3, 1990. In September 1990, roughly five months after being placed at ITF, defendant Burt, who was the warden at ITF at the time, sought approval with defendant Classification Director Dyke to transfer Ward to another level II custody facility. Dyke approved the transfer and Ward was transported to URF, a level II facility in the Upper Peninsula of Michigan. Defendant Mayer is currently the acting warden of ITF. Defendant Christians is the resident unit manager of ITF.

Defendants maintain that the decision to transfer was based on valid penological concerns: Ward's adjustment problems at ITF and the need to provide the staff with a respite. Defendants emphasize that within a five-month period, Ward received two major misconduct tickets (and was found guilty on both) and had changed housing units twice at his own request. Additionally, the ITF staff was under considerable stress because of Ward's overly litigious behavior; from May 3, 1990 to September 24, 1990, Ward filed 67 Step I grievances and 48 Step II grievances. He also filed several lawsuits against ITF staff during this period. Defendant Dyke contends, therefore, that the transfer was approved to give Ward a fresh start, and to give the staff relief from dealing with his demands. By contrast, Ward argues that the transfer was in retaliation for his frequent use of the grievance system and/or his use of the courts and to dissuade him from voicing his complaints in the future.

Ward sued under 42 U.S.C. § 1983, alleging violations of his First Amendment rights

---

* The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

and conspiracy to violate those rights.[1] Defendants moved for summary judgment, claiming that they were entitled to qualified immunity. The district court referred the motion to a magistrate judge.

The magistrate judge concluded that defendants were not entitled to qualified immunity. The magistrate judge found that defendants arranged the transfer to deter Ward's litigious behavior, knowing that Ward would perceive the transfer as a punitive message. The magistrate judge also found that the lateral transfer to another level II facility violated Ward's clearly established right to be free of retaliation or reprisal for exercising his First Amendment right to seek redress of grievances. The magistrate judge further concluded that a question of material fact remained as to whether defendants acted in good faith in transferring Ward. The district court adopted the magistrate judge's findings and denied defendants' request for qualified immunity.

## II.

■ Ward moves to dismiss this appeal on jurisdictional grounds. In general, a denial of a motion for summary judgment is not appealable. Denial of summary judgment on the basis of qualified immunity is, however, appealable immediately as a final judgment under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985)(citing 28 U.S.C. § 1291); *Rodgers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir.1995). Because defendants' motion for summary judgment, based on qualified immunity, was denied, their interlocutory appeal is properly before this court.

■ Ward also seeks to invoke this court's jurisdiction on issues other than qualified immunity, i.e., the district court's denial of his motion for partial summary judgment with respect to liability. We are without jurisdiction to entertain these issues. *Mitchell*, 472 U.S. at 524–25, 528, 105 S.Ct. at 2814–15, 28 U.S.C. § 1291.

## III.

■ When evaluating the conduct of prison officials, the courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979); *Skelton v. Pri-Cor Inc.*, 963 F.2d 100, 103–04 (6th Cir.1991), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1682, 118 L.Ed.2d 398 (1992). Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). When a claim for qualified immunity is raised within the context of a motion for summary judgment, we first examine whether the plaintiff has stated a § 1983 claim against the defendants before addressing whether qualified immunity should attach. *McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir.1995). If the plaintiff has asserted a violation of a clearly established constitutional right, we then examine whether the defendant's conduct violated that right. *Id.*

■ We review the district court's denial of a qualified immunity claim de novo. *Rodgers*, 43 F.3d at 1085. In determining whether a right was clearly established at the time defendants acted, "the law must be clear in regard to the official's particular actions in the particular situation." *Black v. Parke*, 4 F.3d 442, 445 (6th Cir.1993)(quoting *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.), *cert. denied*, 502 U.S. 863, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991)). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*,

1. In an Opinion and Order entered on May 25, 1993, the district court granted defendants' partial motion for summary judgment as to defendants Brown, Bolden, Houseworth, and Haskell.

In the same opinion, the district court dismissed Ward's substantive due process, equal protection and Eighth Amendment claims.

483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Rodgers,* 43 F.3d at 1085. In order to determine whether a constitutional right is "clearly established" we must look to "the federal constitutional, statutory, and case law existing at the time of the challenged action." *Rodgers,* 43 F.3d at 1085.

■ Defendants contend that Ward has failed to allege the violation of a clearly established right. Defendants argue that they are entitled to qualified immunity because there is no constitutional right not to be transferred from one level II institution to another when prison officials, in the exercise of their discretion, determine that a prisoner is an adjustment problem. We agree. Accordingly, we hold that the district court improperly concluded that Ward had shown a violation of a constitutionally protected right.

■ Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.; Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum,* 427 U.S. at 228, 96 S.Ct. at 2540.

In the instant case, Ward was filing approximately five grievances or appeals (67 grievances and 48 appeals in five months) per week. Defendants claim, and Ward does not dispute, that the sheer volume of Ward's complaints interfered with prison administration and caused tension among staff. Dyke testified that he approves transfers to other facilities when tension between staff and a prisoner runs high, regardless of the source of the tension. The ability to transfer a prisoner who is interfering with prison administration and staff morale goes to the essence of prison management. "Holding that arrangements like this [transfers to another prison] are within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges." *Meachum,* 427 U.S. at 228–29, 96 S.Ct. at 2540.

■ Ward attempts to circumvent the holdings of *Meachum* and its progeny by arguing that his transfer was in retaliation for availing himself to the internal prison grievance procedure and to the courts. Although defendants admit that Ward was transferred in part to give prison staff a respite from his continuous barrage of grievances, this reason is not an impermissible reason for a transfer. By transferring Ward, defendants were able to maintain the peaceful management of the prison by reducing the tension between the staff and Ward without discouraging him from seeking redress of his grievances.

Additionally, as in the instant case, transfers often are motivated by a prisoner's conduct:

> That an inmate's conduct, in general or in specific instances, may often be a major factor in the decision of prison officials to transfer him is to be expected unless it be assumed that transfers are mindless events. A prisoner's past and anticipated future behavior will very likely be taken into account in selecting a prison in which he will be initially incarcerated or to which he will be transferred to best serve the State's penological goals.

*Meachum,* 427 U.S. at 228, 96 S.Ct. at 2540. Here, the prison authorities were justified in concluding that Ward's behavior during his five months at ITF evidenced his discontentment with the facilities, staff, and fellow inmates at ITF.[2] Ward's failure to adjust was

---

**2.** In addition to the numerous grievances and

lawsuits filed during this time, Ward received

detrimental to himself and also posed a potential threat to other inmates and the staff.

■ Although it is clearly established that prisoners have a fundamental right of access to the courts and the right to petition for a redress of grievances, *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Knop v. Johnson,* 977 F.2d 996, 1002–03 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993), Ward does not allege that these rights have been impaired. Even if defendants' actions had some effect on Ward's future filing of grievances, his transfer is permissible where it serves a legitimate penological interest. *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). Indeed, the prison officials' decision to transfer was upheld in *Montanye,* a case in which the prisoner-plaintiff alleged that he was transferred in retaliation for rendering legal assistance to other prisoners and petitioning the court for redress. Nor is it relevant that the new facility, although also a level II facility, is less desirable than the facility from which Ward was transferred. *See Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538 ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.").[3]

The transfer here was to another level II facility; the fact that a prisoner may not like a certain prison location does not automatically transform a valid transfer into a constitutional violation. Ward has no constitutional right to remain at a specific facility or to prevent a transfer to another level II facility

for a permissible reason. Under these facts, Ward has failed to state a clearly established constitutional right that was violated as a result of the transfer. *Bell,* 441 U.S. at 547, 99 S.Ct. at 1878 (courts afford prison administrators "wide-ranging deference in the ... execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Therefore, defendants are entitled to qualified immunity.[4]

## IV.

For the reasons set forth above, we **REVERSE** the district court's denial of qualified immunity.

---

two major misconduct tickets and repeatedly requested housing unit transfers within ITF.

**3.** Accordingly, the July 1990 letter submitted by the director of the MDOC to the chief investigator, Office of Legislative Corrections Ombudsman is of no use to Ward. This letter simply indicates that some prisoners find placement in an Upper Peninsula facility inconvenient. This does not transform the transfer into a constitutional violation.

**4.** Ward's reliance on this circuit's unpublished decision in *Wesselman v. Ashley,* No. 89–5520, 1990 WL 41007 (6th Cir. Apr. 10, 1990)(per curiam) is misplaced. *Wesselman* involved a prisoner's claim that he was transferred to a higher security prison in retaliation for exercising his First Amendment redress of grievances and did not involve a lateral transfer.