IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Brief July 20, 2005

## SHERMAN ALEXANDER HENDERSON v. DAVID MILLS, WARDEN

**A Direct Appeal from the Circuit Court for Lauderdale County**
**No. 5867      The Honorable Joseph Walker, Judge**

_____

**No. W2005-01040-COA-R3-CV - Filed September 1, 2005**

_____

Appellant is an inmate in the custody of the Tennessee Department of Correction. Appellant filed suit against the Warden of the West Tennessee State Penitentiary on grounds of retaliation and violation of inmate's civil rights arising from inmate's reclassification and transfer. The trial court granted Warden's Tenn. R. App. P. 12.02 Motion to Dismiss. Inmate appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Sherman Alexander Henderson, Pro Se

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Jennifer L. Brenner, Office of the Attorney General, Nashville, For Appellee, Warden David Mills

**OPINION**

Sherman Alexander Henderson ("Appellant") is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). David Mills ("Appellee") is the Warden of the West Tennessee State Penitentiary ("WTSP"). On May 24, 2004, Mr. Henderson filed a "Complaint for Violation of Civil Rights under Tennessee Code Annotated, § 28-3-104, et seq." (the "Complaint"). In his Complaint, Mr. Henderson asserts that Warden Mills retaliated against him by transferring him from the WTSP to the Whiteville Correctional Facility ("WCF"). The Complaint reads, in pertinent part, as follows:

> COMES NOW, Plaintiff, Sherman A. Henderson...Pro se, and
> pursuant to T.C.A. §28-3-104(a)(1)(3), and moves this Honorable
> Court for a declaratory relief judgment in this complaint for violation
> of his civil rights and issue an order of same that the warden's action

was a violation of Plaintiff's rights, and to pay compensatory and punitive damages for such violations, and in addition to, the compensable relief sought in the relief section herein as full restoration of rights and relief.

## I.  STATEMENT OF THE CASE

The above named defendant is the Warden of the West Tennessee State Penitentiary, acting as a[n] agent of the Tennessee Department of Correction of the [S]tate of Tennessee, and during his official, individual and personal capacities violated Plaintiff's clearly established First Amendment right to freedom of expression entitled to him under the state and federal constitution.

Defendant David Mills knew he was violating Plaintiff's well established civil rights, and the Plaintiff's First Amendment retaliatory transfer was done in bad faith and maliciously because Plaintiff exercised his civil rights.

Plaintiff never had any problems with Warden Mills in the past, in fact, Plaintiff hardly even kn[e]w the man.

Plaintiff learned of Warden Mills' retaliatory transfer of Plaintiff via his own sworn affidavit that he was forced to submit in another case in federal district court in Nashville, TN.[1]

Wardens of prisons have authority and discretion regarding prisoners' transfers, however, they do not have authority, nor the discretion to retaliate against a prisoner, obviously for no other reason than because the prisoner writes him letters about his concerns, well being and wrongful actions of lower level staff.[2]  Wardens nor their staff can act with impunity for their action in such a manner.

＊  ＊  ＊

## III.  STATEMENT OF THE FACTS

---

[1] Citation omitted.  The Affidavit of Warden Mills was attached to Mr. Henderson's Complaint and is discussed *infra*.

[2] These letters dated December 30, 2003, January 5, 2004, and January 7, 2004 were attached to Mr. Henderson's Complaint.

-2-

On or about December 30, 2003, Plaintiff was housed at West Tennessee State Penitentiary....

Further, on or about this same date, Plaintiff began writing letters (three (3) letters) of inquiry to Warden David Mills about conduct that was in violation of TDOC policies and procedures. Plaintiff also gave notice copies of one letter to: Deputy Warden Henry Steward, Associate Warden of Operations Ross Bates, AWO Vicky Kirby and his then Unit Manager Sweat.

On or about January 19, 2004, Warden Mills subsequently retaliated against me by increasing my Minimum Trustee custody level to a more restrictive level.

Moreover, as a direct result of me having written Warden Mills expressing my concerns of my treatment in a respectful manner, I was transferred to my current location at the CCA–Whiteville Correctional Facility in Whiteville, Tennessee....

But for Plaintiff's written inquiries to Warden David Mills, he would not have been retaliated against by Warden Mills thus subsequently increasing Plaintiff's Trustee custody to Minimum Restricted and transferred.

## ARGUMENT
## FEDERAL CASES IN SUPPORT OF A CLEARLY ESTABLISHED RIGHT

Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998) (holding premature a district court dismissal of §1983 claim for allegedly retaliatory transfer);

Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999) (retaliatory transfer charge supported by evidence that "but for" inmate's protected speech and religious activity, transfer would not have occurred);

Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 585 (D.C. Cir. 2002) (United States Bureau of Prisons may not transfer an inmate to a new prison in retaliation for exercising his or her 1st Amendment rights);

All Plaintiff must show, is that retaliatory motives are the only reasons for his transfer in order to state a claim for relief. Warden David Mills' sworn affidavit, demonstrates his retaliatory motive....

IV. RELIEF

1). That Defendant David Mills, Warden, pay to the Plaintiff, Compensatory Damages in the amount of Twenty-Five Hundred Dollars ($2,500.00);

2). Defendant David Mills, Warden, pay to the Plaintiff, Punitive Damages in the amount of Five Thousand Dollars ($5,000.00); AND IN ADDITION TO,

3). Plaintiff be ordered returned to West Tennessee State Penitentiary's Minimum Security Complex; Minimum Trustee custody level be fully restored; his previously held prison job assignment be restored to Heavy Equipment Operator/Tractor Driver under Supervisor/Officer Barry Collier Produce Department; and, receive back pay from December 30, 2003 to the retaliatory transfer complaint's resolution.

Attached to Mr. Henderson's Complaint was the sworn Affidavit of Warden Mills. This Affidavit was filed in the case of **Sherman Henderson, et al. v. Phil Bredesen, et al.**, a United States District Court case also initiated by Mr. Henderson.[3] Warden Mills' Affidavit explains Mr. Henderson's reclassification and transfer from WTSP to WCF as follows:

5. Mr. Henderson was received into the custody of the TDOC in 1980 and, on 05/23/2000 was transferred to Northwest Correctional Facility to WTSP. On 12/05/2000, Mr. Henderson's classification was changed from Minimum Direct to Minimum Trustee status upon Mr. Henderson being scheduled for future parole board consideration in 12/2003. Pursuant to the authority provided in TDOC Policy #404.07, at Subsection VI F.1., an inmate who has a conviction for First Degree Murder, may be considered for Minimum Direct or Minimum Trustee classification if such inmate is within less than three (3) years from his earliest release date. Mr. Henderson, therefore, was classified on Minimum Direct status on 12/07/2000 and later classified to Minimum Trustee status on 12/12/2001.

---

[3] **Sherman Henderson, et al v. Phil Bredesen, et al** is Case No. 3:04-WO43.

6. Mr. Henderson remained on Minimum Trustee classification until 01/12/2004 when, at such time, his security classification was changed to Minimum Restricted. The change was due to the actions of the Tennessee Board of Parole and Probation in denying parole release for Mr. Henderson and setting a future date for parole consideration of 12/01/2010. Since Mr. Henderson, due to the decision and ruling of the Board, was no longer within three (3) years of his earliest release date per TDOC Policy # 404.07, Mr. Henderson no longer qualified for Minimum Direct or Minimum Trustee classification consideration.

7. Mr. Henderson, furthermore, does not qualify to be "grandfathered" at the security classification of Minimum Direct or Minimum Trustee under the provisions of TDOC Policy #404.07, Subsection VI, F, 2, which provides that "[T]hose inmates assigned prior to May 24, 2000 [the effective date of the policy] to remain so long as current status does not change." Such inmates, with a conviction for First Degree Murder, would not have to meet the three (3) year requirement set forth in Subsection VI, F, 1, Mr. Henderson was reclassified and placed on Minimum Restricted Classification status, from Minimum Direct status, on 05/22/2000 while housed at Northwest Correctional Complex. Mr. Henderson was reclassified as Minimum Direct at WTSP on 12/07/2000, after the 05/24/2000 effective date of TDOC Policy #404.07. Therefore, Mr. Henderson does not qualify to be considered as "grandfathered" for Minimum Direct or Minimum Trustee security classification under the policy. (Emphasis in original).

8. At WTSP, when an inmate who is classified as Minimum Trustee, is denied release on parole by the Tennessee Board of Paroles and Probation, it is determination [sic] that the inmate's Minimum Trustee security classification be temporarily suspended for a period of 60-90 days, with the inmate reclassified as Minimum Restricted, requiring the inmate to be housed with secure confinement. However, since the decision of the Board, to defer further parole consideration until 12/01/2010, made Mr. Henderson ineligible for return to Minimum Direct or Minimum Trustee classification, the inmate was properly classified as Minimum Restricted.

9. On 02/23/2004, at my request, Mr. Henderson was transferred from WTSP to Whiteville Correctional Facility (WCFA). My decision to transfer Mr. Henderson from WTSP to WCFA was solely and directly related to the repeated extreme concerns expressed by

Mr. Henderson that he was being treated wrongfully by the WTSP staff regarding his reclassification. Given the fact that the Whiteville facility is the same, if not closer, to Memphis as the WTSP facility, there would be no driving distance for Mr. Henderson's wife to visit with Mr. Henderson.

Mr. Henderson filed several motions for judgment by default against Warden Mills for his alleged failure to answer the Complaint. On July 30, 2004, Warden Mills filed a "Motion to Dismiss," which reads, in pertinent part:

> [D]espite Plaintiff's allegations to the contrary, his reclassification and subsequent transfer were done in accordance with TDOC policies and procedures. Specifically, because the Tennessee Board of Probation and Parole declined to release the plaintiff on parole and deferred his next parole hearing date for December 1, 2010, he was no longer within three years of his earliest release date. Per TDOC policy #404.07, he no longer qualified for Minimum Direct or Minimum Trustee classification consideration. As a result, his classification was changed to Minimum Restricted. Such a classification required that he be housed with secure confinement.
>
> With regard to the plaintiff's transfer from the West Tennessee State Penitentiary to the Whiteville Correctional Facility, the action was taken by Warden David Mills in response to several complaints, made by the plaintiff, about his treatment by the staff at the West Tennessee State Penitentiary. In any event, a prison may transfer an inmate simply to give the prison staff a respite from the prisoner's grievance filings. **Ward v. Dyke**, 58 F.3d 271 (6th Cir. 1995). Such an inmate's subsequent allegation of retaliation fails to state a claim for relief, because a transfer from the general population of one prison to another does not constitute a retaliatory "adverse action," as it would not deter a person o[f] ordinary firmness from the exercise of his First Amendment rights. **Mandela v. Campbell**, 181 F.3d 102, 1999 WL 357825 (6th Cir. Tenn.).

Warden Mills filed a concurrent "Memorandum in Support of Motion to Dismiss." Mr. Henderson responded to Warden Mills' Motion to Dismiss on August 11, 2004, and also filed an amended response on August 16, 2004. On December 2, 2004, Mr. Henderson filed a Motion for Summary Judgment, along with a Memorandum of Law and Statement of Undisputed Facts in support thereof. On January 10, 2005, Warden Mills filed a response to Mr. Henderson's Motion

-6-

for Summary Judgment. The response renews the arguments set forth in Warden Mills' "Motion to Dismiss," *see supra*.

On March 29, 2005, the trial court entered its Order granting Warden Mills' "Motion to Dismiss." In its Order, the trial court specifically adopts the legal analysis contained in the "Motion to Dismiss" and memorandum in support thereof. The Order also denies Mr. Henderson's Motion for Summary Judgment. Mr. Henderson appeals from this Order and raises two issues for review, as stated in his brief:

> 1. Did the trial court err when its sided with the defendant, that he the David Mills Warden did not violate plaintiff's First Amendment Right to Freedom of Speech when plaintiff speech was not inconsistent with incarceration and when defendant admitted by affidavit he retaliated against plaintiff?
>
> 2. Did the defendant violate plaintiff's Free Speech rights by retaliating against plaintiff by transferring him to a more secure facility for writing defendant about lower level officials' conduct?

We perceive the sole issue to be whether the trial court erred in dismissing Mr. Henderson's Complaint for failure to state a claim for retaliation. It is well settled in Tennessee that a motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). Obviously, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint considered alone and taken as true are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn. 1994).

As stated in his Complaint, Mr. Henderson asserts that Warden Mills retaliated against him by transferring him from WTSP to WCF. The retaliation, he claims, was in response to three letters he wrote to Warden Mills regarding his reclassification, his transfer, and alleged violations of the TDOC policies. It is well settled that, under the First Amendment, prison inmates have the right to petition or to complain for the redress of grievances, and that right is violated when prison officials retaliate against a prisoner who submits complaints. *See Wolfel v. Bates*, 707 F.2d 932, 933-34 (6th Cir.1983). An act of retaliation taken against a prisoner who complains about a grievance is actionable under 42 U.S.C. § 1983 even though the alleged retaliatory action, if taken for another reason, would be permissible. *See Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir.1978); *see also Newsom v. Norris*, 888 F.2d 371, 376-77 (6th Cir.1989). In order to establish a claim of retaliation,

a plaintiff must establish: (1) that the prisoner engaged in protected conduct; (2) a chronology of events from which retaliation may reasonably be inferred; (3) that a sufficiently adverse prison action was taken against him and that such an action would deter a person of "reasonable firmness" from continuing the protected conduct; and (4) a causal connection between the conduct and the adverse action. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999); *Anderson v. Sundquist*, 1 F.Supp.2d 828, 832-833 (W.D.Tenn.1998).

Although Mr.Henderson's action in writing letters of inquiry to Warden Mills constitutes conduct protected by the First Amendment, he fails to meet the remaining factors stated above. In *Ward v. Dyke* 58 F.3d 271 (6th Cir. 1995), the Sixth Circuit Court of Appeals considered the §1983 claim of an inmate who alleged that he was transferred in retaliation for filing numerous grievances and legal actions. Even though the prison officials, in that case, admitted that the inmate's transfer was based upon the numerous grievances filed, the Court found that the transfer did not impair the prisoner's access to the courts or his ability to petition for redress of grievances. The *Ward* Court specifically held that:

> Ward attempts to circumvent the holdings of *Meachum* and its progeny by arguing that his transfer was in retaliation for availing himself to the internal prison grievance procedure and to the courts. Although defendants admit that Ward was transferred in part to give prison staff a respite from his continuous barrage of grievances, this reason is not an impermissible reason for a transfer. By transferring Ward, defendants were able to maintain the peaceful management of the prison by reducing the tension between the staff and Ward without discouraging him from seeking redress of his grievances.
>
> \*                              \*                              \*
>
> Although it is clearly established that prisoners have a fundamental right of access to the courts and the right to petition for a redress of grievances, Ward does not allege that these rights have been impaired. Even if defendants' actions had some effect on Ward's future filing of grievances, his transfer is permissible where it serves a legitimate penological interest.

*Ward v. Dyke*, 58 F.3d 271 at 274-75 (citations omitted).

Like the plaintiff in *Ward*, Mr. Henderson makes no assertion that either his transfer or his reclassification resulted in any impairment of his ability to exercise his First Amendment rights. Therefore, it cannot be inferred that his transfer and/or reclassification constituted an "action [that] would deter a person of 'reasonable firmness' from continuing the protected conduct."

It is well settled that prisoners do not have the constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532 (1976). As noted by the

*Ward* Court, the Supreme Court has repeatedly held that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would impermissibly interfere with prison administration. *Ward v. Dyke*, 58 F.3d 271 at 274 (citing *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976)). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Ward v. Dyke*, 58 F.3d 271 (citing *Meachum v. Fano*, 42 U.S. at 228, 96 Sup.Ct. at 2540).

Furthermore, prisoners have no liberty interest in the procedure affecting his or her classification because the resulting restraint does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 482 (1995). A prisoner has no constitutional right to be incarcerated in a particular prison or to be held in a specific security classification. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Additionally, prisoners have no constitutional right to prison employment, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989), and inmates are not vested with a constitutionally protected interest in recommendations for work opportunities. *Hansard v. Barret*, 980 F. 2d 1059, 1062 (6th Cir. 1992).

Because Mr. Henderson has no constitutionally protected right concerning his placement, classification, or employment within the prison system, in order to state a claim for retaliation, Mr. Henderson must show a causal connection between his transfer, reclassification and/or change in employment and his letter writing. The Affidavit of Warden Mills, which Mr. Henderson attaches to his Complaint, directly contradicts Mr. Henderson's retaliation claim. The Affidavit, as set out above, gives very specific (and non-retaliatory) reasons for Mr. Henderson's transfer and reclassification. Warden Mills' Affidavit asserts that the reclassification and transfer served a legitimate penological interest and were done in accordance with the TDOC policies and procedures. In the face of the specific reasons outlined in the Affidavit, Mr. Henderson's Complaint merely asserts, as a conclusory statement without specific grounds, that Warden Mills engaged in retaliatory conduct. Mr. Henderson's assertions do not evince a chronology of events from which retaliation may reasonably be inferred and consequently are not sufficient to show the necessary causal connection between the protected conduct and the adverse action.

For the foregoing reasons, we affirm the Order of the trial court dismissing Mr. Henderson's Complaint. Costs of this appeal are assessed against the Appellant, Sherman Alexander Henderson, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.