# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
On-Briefs January 6, 2006

## SHERMAN ALEXANDER HENDERSON v. ROSS BATES, ET AL.

**A Direct Appeal from the Circuit Court for Lauderdale County**
**No. 5923     The Honorable Joseph H. Walker, Judge**

---

### No. W2005-01506-COA-R3-CV - Filed February 17, 2006

---

Appellant is an inmate in the custody of the Tennessee Department of Correction. Appellant filed a Title 42 U.S.C. §1983 claim against the Appellee/Associate Warden and Appellee/Pre-Release Coordinator alleging a violation of the inmate's civil rights arising from a change in inmate's custody status. The trial court granted the Appellees' Tenn. R. App. P. 12.02 Motion to Dismiss. Inmate appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Sherman A. Henderson, Pro Se

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solictor General and Bradley W. Flippin, Assistant Attorney General for Appellee, Ross Bates and Paul Barrett

### OPINION

Sherman Alexander Henderson ("Appellant") is an inmate in the custody of the Tennessee Department of Correction (the "TDOC"). Ross Bates is an Associate Warden with the TDOC. Paul Barrett (together with Ross Bates, "Appellees") is a Pre-Release Counselor with the TDOC. On November 30, 2004, Mr. Henderson filed a "Complaint for Violation of Civil Rights Under Title 42 USC §1983" (the "Complaint") against Messrs. Bates and Barrett. In his Complaint, Mr. Henderson asserts that Messrs. Bates and Barrett conspired to deprive Mr. Henderson of his constitutional right to equal protection under the law. Specifically, Mr. Henderson asserts that Messrs. Bates and Barrett willfully and maliciously discriminated against Mr. Henderson by changing his custody status on December 30, 2003. Mr. Henderson alleges that he was treated differently than similarly situated inmates and that this differential treatment violated his right to equal protection under the law.

On May 25, 2005, Messrs. Bates and Barrett filed a "Motion to Dismiss" (the "Motion"), along with a Memorandum of Law in support thereof. In their Motion, Messrs. Bates and Barrett assert that they have "absolute immunity from suit as [] state employee[s] and sovereign immunity as [] officer[s] of the State." Further, the Motion states that:

> ...Mr. Henderson fails to state an equal protection claim. An inmate has no constitutional right to avoid administrative segregation, placement in a particular unit of the prison, or a particular security classification. As Mr. Henderson fails to allege a fundamental constitutional right or liberty interest at stake, he fails to state an equal protection claim. Additionally, Mr. Henderson has not alleged that he was discriminated against based on a suspect classification. His movement and change in custody status was rationally related to penological interests.

By Order of May 26, 2005, the trial court granted the Motion to Dismiss and adopted the legal analysis set out in the Memorandum of Law.

Mr. Henderson appeals, *pro se*, and raises three issues for review as stated in his brief:

> 1. Did the Circuit Trial Court err when it deemed defendants' were absolutely immune from this §1983 action?
>
> 2. Did the Circuit Trial Court err when it dismissed plaintiff's civil right action before he could conduct civil discovery?
>
> 3. Did the Circuit Trial Court err in not determining whether plaintiff['s] agreement in signing Form CR-0996 "Department of Correction Assignment of Responsibility" form that he entered constituted a conditional contract in his Minimum Direct, Trusty custody and annex placement, so long as he maintain[ed] good behavior while housed at an annex?

We perceive the sole issue to be whether the trial court erred in dismissing Mr. Henderson's Complaint for failure to state an equal protection claim. It is well settled in Tennessee that a motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). Obviously, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint considered alone and taken as true are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975). In

considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn. 1994).

## Equal Protection Claim

The Supreme Court of Tennessee has stated that the Tennessee Constitution's equal protection provisions confer "essentially the same protection" as the equal protection clause of the United States Constitution. *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn.1993). Equal protection requires that persons similarly situated be treated the same under the law, or that the state treat persons under like circumstances and conditions the same. *Genesco, Inc. v. Woods*, 578 S.W.2d 639, 641 (Tenn.1979), *superseded on other grounds* by *Combustion Eng'g, Inc. v. Jackson*, 705 S.W.2d 655 (Tenn.1986); *Jaami v. Conley*, 958 S.W.2d 123, 126 (Tenn.Ct.App.1997). Nevertheless, "[t]he Fourteenth Amendment guarantees equal laws, not equal results." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979), aff'd, *Feeney v. Personnel Adm'r of Mass*., 445 U.S. 901, 100 S.Ct. 1075, 63 L.Ed.2d 317 (1980).

Equal protection challenges are based upon governmental classifications. The classic analysis for such challenges involves the application of differing standards depending upon the effect. That analysis requires strict scrutiny only when the classification interferes with a fundamental right or operates to the peculiar disadvantage of a suspect class. *State v. Tester*, 879 S.W.2d 823, 828 (Tenn.1994). The standard of reduced scrutiny applies in other situations requiring only that a rational basis exist for the classification, or that the classification have a reasonable relationship to a legitimate state interest. *Id*. Unless a suspect classification or denial of a fundamental right to a particular class is involved, equal protection attacks on prison regulations are analyzed to determine whether distinctions between groups have a rational basis, or, more particularly, whether they are reasonably related to penological interests. *Lee v. Young*, No. 99-6012, 2002 WL 1781335 (6th Cir. Nov. 6, 2000) (citing *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir.1988)).

It is well settled that prisoners do not have the constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532 (1976). The United States Supreme Court has repeatedly held that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would impermissibly interfere with prison administration. *See, e.g., Ward v. Dyke*, 58 F.3d 271 at 274 (citing *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976)). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Ward v. Dyke*, 58 F.3d 271 (citing *Meachum v. Fano*, 42 U.S. at 228, 96 Sup.Ct. at 2540).

Absent an allegation of interference with a fundamental right or discriminatory treatment based on suspect classification, a plaintiff cannot maintain an equal protection claim because he or she was treated differently from others alleged to be similarly situated. *Booher v. U.S. Postal Serv.*, 843 F.2d 943, 944 (6th Cir.1988). In *Booher*, a discharged probationary employee alleged that he was "singled out" for discharge and other probationary employees with worse attendance records were not discharged. *Id*. The Sixth Circuit noted that Booher sought to make out a violation of equal protection by claiming he was treated differently from other similarly situated employees. The Court concluded that Booher's claim ultimately failed because there was no claim that Booher was victimized because of some suspect classification, which is an essential element of an equal protection claim, and that, even assuming there was an unjustified action taken against Booher, this single action, without more, cannot form the basis of an equal protection claim. *Id*. The *Booher* Court reiterated that the equal protection concept does not create a classification of persons who received better treatment. *Id*. In other words, an equal protection claim does not arise simply because of differing treatment.

This reasoning has been applied in the context of a prisoner challenging his reclassification and transfer by prison officials. *Newell v. Brown*, 981 F.2d 880 (6th Cir.1992), cert. denied, 510 U.S. 842, 114 S.Ct. 127, 126 L.Ed.2d 91 (1993). After first determining that the prisoner did not have a constitutionally protected liberty interest, the court held that "the plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently." *Id*. Relying upon *Booher*, the *Newell* Court held that the prisoner would have to show he was reclassified because of some suspect classification. *Id*. Similarly, a prisoner alleging selective enforcement of a prison regulation cannot sustain an equal protection claim absent an assertion and a showing of some purposeful discrimination. *Fletcher v. Chartrand*, 869 F.2d 1490 (6th Cir.1989) (citing *McCleskey v. Kemp*, 481 U.S. 279, 109 S.Ct. 1756 (1987)).

In the instant case, not only does Mr. Henderson not have a constitutional right to a particular placement in the prison system, but he also has not alleged that he was treated more harshly than others because he is a member of a suspect class. Mr. Henderson only alleges that he was "singled out and victimized because of his classification within his group of prisoners convicted of first degree murder." First degree murderers are not protected as a suspect class. Consequently, there need only be a rationale basis for Mr. Henderson's custody status being changed that is reasonably related to a penological interest. *Lee v. Young*, No. 99-6012, 2002 WL 1781335 (6th Cir. Nov. 6, 2000) (citing *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir.1988)).

The TDOC is vested with wide discretion in the management and supervision of penal institutions. *See* T.C.A. §4-6-102 (2005). Mr. Henderson asserts that he was moved "to a more secure housing unit...due to the parole board having declined plaintiff for seven (7) years[.]" Considering the effect of a decline of parole on a prisoner's propensity to escape or to act out inappropriately, movement to a more secure housing unit or a change in custody status of the inmate would certainly be rational under the circumstances and would serve the legitimate penological interest of maintaining security and order. Consequently, and for the foregoing reasons, we find that

-4-

the trial court did not err in finding that Mr. Henderson fails to state a claim for violation of his right to equal protection.

Having concluded that the trial court properly dismissed Mr. Henderson's claim on the basis that Mr. Henderson failed to state a cause of action for equal protection violation, we also conclude that the trial court did not err in suspending discovery and/or in granting the Motion to Dismiss before Mr. Henderson was allowed to respond to same. As discussed above, a Tenn R. Civ. P. 12.02 motion to dismiss tests the legal sufficiency of the complaint only. Consequently, a response by Mr. Henderson and/or further discovery would have worked no benefit to him.

For the foregoing reasons, we affirm the Order of the trial court dismissing Mr. Henderson's Complaint. Costs of this appeal are assessed against the Appellant, Sherman Alexander Henderson, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.